

# PRYOR CASHMAN LLP

New York | Los Angeles

7 Times Square, New York, NY 10036   Tel: 212-421-4100   Fax: 212-326-0806                www.pryorcashman.com

**Tom J. Ferber**
Partner

Direct Tel: 212-326-0194
Direct Fax: 212-798-6388
tferber@pryorcashman.com

January 13, 2014

**VIA CM/ECF FILING**

Ms. Kimberly Gay
Case Manager, Clerk's Office
United States Court of Appeals
   for the Second Circuit
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

     Re:   **Webb v. Stallone, et al., No. 13-0324-cv**

Dear Ms. Gay:

     We represent the Defendants-Appellees ("Defendants") in the above-referenced matter. We write in response to the January 6, 2014 letter of Plaintiff-Appellant's counsel ("Plaintiff's Letter") requesting that the Court take judicial notice of a complaint and exhibits filed in California Superior Court by defendant Nu Image and others against former defendant David Callaham ("Callaham") and the Writers Guild of America West ("WGA") (hereafter, the "NI Complaint"), which concerns a monetary dispute regarding Callaham's right to sequel payments based on a "Screenplay By" credit versus a "Story By" credit on *The Expendables*, the film which is the subject of this case (the "Film"). Defendants oppose Plaintiff's request for numerous reasons, including, *inter alia*, on grounds that the materials in the NI Complaint are cumulative and are not relevant. Defendants respectfully request an opportunity to be heard in opposition to Plaintiff's application.

     As is set forth at length in the Joint Appendix ("JA") and Defendants' Brief ("Def. Br."), former defendant Callaham wrote a screenplay entitled *Barrow*, about a team of mercenaries overthrowing the dictator of a Latin American island (D.Br. at 6; JA 188-310, 465-66). Numerous rewrites of Callaham's *Barrow* by defendant Sylvester Stallone ("Stallone") eventually yielded the screenplay for the Film. (See, e.g., Def. Br. at 12-18; JA 598-715, 183.) Following a WGA credit determination proceeding, which was mandatory because Stallone was both a "production executive" and writer on the Film (see Plaintiff's Letter at 55 of 75), Callaham was given sole "Story By" credit and shared "Screenplay By" credit with Stallone.

**PRYOR CASHMAN LLP**

Ms. Kimberly Gay
January 13, 2014
Page 2

Exhibit F to the NI Complaint indicates that the WGA and Callaham filed a claim for arbitration against Nu Image and others in connection with sequel payments (the "WGA Claim"). The WGA Claim alleges that defendant Double Life Productions (an entity which produced the Film for Nu Image) previously paid Callaham "a credit bonus in the amount of $100,000 because Mr. Callaham received a shared 'Screenplay By' credit" on the Film, but has not paid Callaham the sum of $175,000, which is allegedly due him in connection with *The Expendables 2*, the sequel to the Film. (See Plaintiff's Letter at 65-69 of 75 at ¶¶10-13.) The WGA Claim seeks, *inter alia*, payment to Callaham of the sums allegedly due on the sequel, plus interest.

The NI Complaint was filed in response to the WGA Claim. Referring to Callaham emails which were copied from the Joint Appendix in this action (see Exhibits D, E to NI Complaint (Plaintiff's Letter at 61,63 of 75), which are copies of JA825 and JA885), the NI Complaint alleges that Callaham wrongfully accepted a "Screenplay By" credit on the Film. (See generally NI Complaint at ¶¶ 34-47, 63.) Significantly, the NI Complaint acknowledges that Stallone "based part of the story for *The Expendables* on *Barrow*" and that even Stallone acknowledged that Callaham was entitled to a "Story By" credit on the Film. (See id. at ¶¶ 29, 63.) The WGA Screen Credit Manual (Exhibit C to the NI Complaint, Plaintiff's Letter at 29-59 of 75) explains the technical differences between the various WGA screen credits, including a "Story By" and a "Screenplay By" credit. (See Plaintiff's Letter at 49-50 of 75, as well as the WGA's "Rules for Determining Credit," id. at 50-56 of 75.)

The issues on Plaintiff's appeal of the district court's order granting Defendants' motion for summary judgment are (1) whether Plaintiff offered admissible evidence of copying of his script – which post-dated Callaham's *Barrow* – either by (a) access and probative similarity or (b) striking similarity precluding the possibility of independent creation, and (2) whether there is substantial similarity of copyrightable expression between the Film and Plaintiff's screenplay. The dispute between the WGA and Callaham, on the one hand, and Nu Image and affiliated entities, on the other, regarding Callaham's entitlement to sequel payments based on the distinction between WGA "Story By" and "Screenplay By" credits is not relevant to these issues. Moreover, since the NI Complaint is based on Callaham emails which are already part of the record on appeal – indeed, they were literally copied from the Joint Appendix – it is also cumulative of materials already in the record before this Court. See United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1193 (2d Cir. 1989) (court may exclude "even relevant evidence if its probative value is substantially outweighed by the danger of confusion of the issue or if it would be needlessly cumulative").

Plaintiff presumably hopes to use this cumulative material in support of his patently erroneous argument that Defendants had previously denied a connection between Callaham's *Barrow* and Stallone's final shooting script for the Film, but as manifested by materials offered by Plaintiff himself, neither Stallone nor Nu Image/Double Life dispute that Callaham was

**PRYOR CASHMAN LLP**

Ms. Kimberly Gay
January 13, 2014
Page 3

entitled to "Story By" credit under WGA rules on screen credits. (See Stallone's WGA submission, submitted below by Plaintiff, at JA827-29, in which Stallone discusses his contributions to the four elements considered under WGA rules – dramatic construction, original and different scenes, characterization and dialogue – and argues that while Callaham should share "Story By" credit, Stallone should get "Screenplay By" credit because he wrote more than 50% of the final screenplay; NI Complaint at ¶¶29, 63. See also WGA Arbiter 2's opinion, submitted below by Plaintiff, at JA887, discussing why, after evaluating these four elements, Callaham should get "Story By" credit and share "Screenplay By" credit; Appellees' Appendix, which contains all three arbiters' opinions, and Ex. C to NI Complaint, and the WGA Screen Credits Manual, discussing the distinctions between these credits, at AA-1-4.)

"The traditional approach to taking judicial notice of adjudicative facts has been one of caution." 1 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence §201.10 at 201-15 (Joseph M McLaughlin, Ed., Matthew Bender 2d ed. 2010). Defendants respectfully submit that such an approach requires the denial of Plaintiff's request that the Court take judicial notice of the NI Complaint and exhibits because these materials are cumulative and are not relevant to the issues on this appeal. See also id. at §201.13[1][b] (courts will not take judicial notice of factual propositions subject to dispute, even if alleged in pleadings).

Respectfully submitted,

Tom J. Kerber

TJF/skh

1292027 v3
16178.00009